## Rogers v. Philadelphia Transportation Co.

*Joseph D. Shein*, for plaintiffs.

*Bernard J. Smolens*, for defendant.

Bok, P. J., May 3, 1957.—The jury, answering a chart of special findings, found plaintiffs' driver and the motorman both negligent and awarded damages to the passengers, totaling a little over $15,000. This was the second trial of the case.

In asking for a new trial, defendant has argued only two reasons and has abandoned the others.

Its counsel sought to cross-examine plaintiffs' driver about his testimony at a hearing conducted by the Bureau of Motor Vehicles concerning the accident. After it was established that the driver had made a statement, which both counsel seem to consider the

same as a "report", the court sustained objections to further questions which sought to elicit what it was the witness had said.

Section (*a*) of The Vehicle Code of May 1, 1929, P. L. 905, art. XII, sec. 1214, 75 PS §761, provides:

"1. The department may require operators involved in accidents or police departments to file supplemental reports of accidents, upon forms furnished by the department, whenever the original report is insufficient in the opinion of the secretary. Such report shall be without prejudice, shall be for the information of the department, and shall not be open to public inspection. The fact that such reports have been made shall be admissible in evidence solely to prove a compliance with this act, but no such report, or any part thereof, or statement contained therein, shall be admissible in evidence for any other purpose in any trial, civil or criminal, arising out of such accidents."

Hearings are provided for by the same Act of 1929, art. VI, sec. 615, as amended, 75 PS §192, when inter alia, an operator "has committed any violation of the vehicle . . . laws . . ."

Hearings, however, may also be held for reason other than those having to do with accidents. The purpose of the hearings is to determine whether or not to suspend an operator's license, and reasons for doing so include reckless or drunken driving, speeding, allowing one's car to be operated by an unlicensed driver, physical incompetence and many others. If the evidence given at these hearings could be used in the negligence action, not only irrelevance but actual prejudice could result.

The legislature has written its purpose into the act itself when it said that "such report shall be without prejudice, shall be for the information of the department, and shall not be open to public inspection."

This is clear policy whose aim is obviously to help the department and the Secretary of Revenue control highway safety; an operator is more likely to be frank in his report if he knows that he cannot be cross-examined about his statements. This is plainly a valuable source of information to the department. But to make it even clearer, the words "no such report, or any part thereof, or statement contained therein, shall be admissible in evidence . . . in any trial, civil or criminal" were added.

Defendant argues that the operator's testimony is not "part" of the report, and hence is not within the ban. If this were so, the usefulness of the provision would be greatly reduced, if not nullified. Whether the oral testimony is used to explain an operator's report or to provide the material for it, it is as effectively a "part" of the report and a "statement contained therein" as the notes of testimony are a part of the record of a trial.

The protection of such testimony is easily justified on the ground of public policy.

The second reason for a new trial concerns the status as claimants against defendant of two passengers in the trolley car who testified to the accident. While cross-examining one of them, Armstrong, about a possible inconsistent statement made to defendant's investigator, its counsel established that Armstrong wanted to make a claim for his injuries but did not do so within two years and was paid nothing. No amount of the desired claim was of course mentioned or asked about.

Later, Entin, the other passenger who testified for plaintiffs, was asked by their counsel if he had made a claim against defendant. Defendant's counsel objected but was overruled because he had opened the door to the motives and inferences involved by himself asking the same questions of Armstrong. Entin did have a claim, which was settled, and a sum paid him.

His counsel did not ask him how much and up to that point the fairness of the situation was evenly balanced. Defendant's counsel, however, then asked: "You brought suit against the Transportation Company for $5000, didn't you?"

Whatever had gone before, this question was independently improper, as its effect was to make the witness appear incontinently greedy. Since there is no penalty in Pennsylvania for asking, provided only that one asks more than the jury gives, Entin could have asked for five million and counsel's question would have made him appear not only greedy but a lunatic.

Counsels' motives seem to us all mixed up over this. Defendant's counsel let Armstrong create the impression that defendant had somehow done him out of his claim, what with its investigators calling on him and perhaps stringing him along until the two years had passed. Instead of letting this impression stand, plaintiffs' counsel got Entin to correct it by bringing out that his claim had been paid. As each lawyer had objected to what the other was doing, honors were perversely even. But the $5,000 question went beyond all this and counsel admits in his brief that his purpose was "to question Entin on the amount of his claim as compared with the amount paid by defendant." Of course that is precisely what is unfair about it.

Defendant's counsel, at the end of the case, asked the trial judge to tell the jury that the settlement of Entin's claim should not be construed as an admission of liability. This was done, apparently to counsel's satisfaction.

The motion for a new trial is overruled.